# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SIERRA ASHLEY DIGGAN,** | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:17-420 |
| v. | : | JUDGE MANNION |
| **NANCY A. BERRYHILL[1],** | : | |
| Defendant | : | |

# **O R D E R**

Pending before the court is the report of Magistrate Judge Martin C. Carlson[2], which recommends that the decision of the Commissioner be

---

[1]On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. On March 6, 2018, the Government Accountability Office stated that, as of November 17, 2017, Ms. Berryhill's status violated the Federal Vacancies Reform Act, which limits the time a position can be filled by an acting official and "[t]herefore Ms. Berryhill was not authorized to continue serving using the title of Acting Commissioner..." Violation of the Time Limit Imposed by the Federal Vacancies Reform Act of 1988 Commissioner, Social Security Administration. Government Accountability Office. March 6, 2018. However, Ms. Berryhill continues to functionally lead the Social Security Administration from her position of record as Deputy Commissioner of Operations. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin, Acting Commissioner of Social Security, as the defendant in this suit.

[2]Throughout his objections, counsel for the plaintiff repeatedly refers to Judge Carlson as the "Magistrate". The title magistrate no longer exists in the United States Courts, having been changed from "magistrate" to "magistrate judge" in 1990. Judicial Improvements Act of 1990, 104 Stat. 5089, Pub. L.

(continued...)

affirmed. (Doc. 9). The plaintiff has filed objections to the report, (Doc. 10), and the defendant has filed a response to the plaintiff's objections, (Doc. 11).

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. Rieder v. Apfel, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see also Univac Dental Co. v. Dentsply Intern., Inc., 702 F.Supp.2d 465, 469 (M.D.Pa.

---

[2](...continued)
No. 101-650, §321 (1990) ("After the enactment of this Act, each United States magistrate . . . shall be known as a United States magistrate judge."). In the future, counsel is reminded to use the correct title when referring to Judge Carlson.

2010) (citing Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

In her appeal, the plaintiff argues that the administrative law judge ("ALJ") erred in concluding that she did not meet the statutory blindness standards, asserting that the various Snellen test[3] results which revealed a visual acuity of less than 20/100 but greater than 20/200 in the plaintiff's better eye should be deemed to be 20/200 vision, and thus satisfy the

---

[3] As set forth by Judge Carlson, there are various means by which visual acuity can be measured. One of the standard methods is the Snellen visual acuity test. Originally, the Snellen test called upon the individual to identify letters of varying sizes on a chart, and the increasing size of the chart letters corresponded with a degree of visual acuity. Given its reliance upon a standardized eye chart, the gradations between levels of visual acuity that could be determined with the original Snellen test were limited to the number of lines on the chart. Frequently, the eye chart contained one line for 20/100 vision with the next level being 20/200 vision. As such, individuals who could not distinguish the letters set forth on the 20/100 line were deemed to have 20/200 vision. Advances, however, have led to the development of a more refined gauge of visual acuity which allows for the determinations of levels of acuity which lie between 20/100 vision and 20/200 vision.

3

statutory definition of blindness in the Act.⁴ In the alternative, the plaintiff argues that an application of the regulation, which denies disability consideration to those whose eye testing was done through some more sophisticated Snellen testing protocol that distinguishes between 20/100 and 20/200 vision, denies claimants equal protection since prior traditional Snellen testing, which made no distinctions, would deem persons who cannot read any letters at the 20/100 line of a Snellen chart to have 20/200 vision.

In carefully considering the plaintiff's claims, Judge Carlson found that substantial evidence supported the decision of the ALJ in this case that the plaintiff did not meet the statutory definition of blindness and that the ALJ's decision did not violate constitutional equal protection principles. Accordingly, Judge Carlson recommends that the decision of the Commissioner be affirmed and the plaintiff's appeal denied.

The court has reviewed the entire report of Judge Carlson, as well as the plaintiff's objections thereto. The plaintiff raises nothing in her objections that was not already argued in the brief in support of her appeal and

---

⁴The visual acuity benchmark which defines blindness for purposes of the regulations and Social Security disability analysis is "central visual acuity of 20/200 or less in the better eye with the use of a correcting lens." 42 U.S.C. §416(i)(1)(B); 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§2.002A2, 202.

addressed by Judge Carlson. The court further agrees with the sound reasoning which led Judge Carlson to his recommendation. As such, the court adopts the reasoning of Judge Carlson as the opinion of the court.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

**(1)** The report and recommendation of Judge Carlson, **(Doc. 9)**, is **ADOPTED IN ITS ENTIRETY**.

**(2)** The decision of the Commissioner is **AFFIRMED** and the plaintiff's appeal **DENIED**.

**(3)** The Clerk of Court is directed to **CLOSE THIS CASE**.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: July 16, 2018**

O:\Mannion\shared\ORDERS - DJ\CIVIL ORDERS\2017 ORDERS\17-420-01.wpd